UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JAMES E. BATES and PATRICIA C. BATES                    CIVIL ACTION

VERSUS                                                   NO.  06-10566

ALLSTATE INSURANCE COMPANY, ET AL            SECTION  "N"  (4)

## ORDER AND REASONS

Before the Court is a Motion to Remand filed herein by Plaintiffs, James E. Bates and Patricia C. Bates (hereinafter referred to as "Plaintiffs").  The removing defendant, Allstate Insurance Company ("Allstate") opposes the Motion to Remand.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiffs own certain property located in the Parish of St. Bernard, at 3429 Karen Drive, Chalmette, Louisiana.  This property was the subject of a homeowners insurance policy from Allstate and a flood policy from Allstate as a WYO, or "write your own", underwritten through the National Flood Insurance Plan ("NFIP").  Plaintiffs had obtained these policies through insurance agent and co-defendant Frank Capella, III ("Capella").

1

On August 29, 2005, Hurricane Katrina made landfall in southeast Louisiana, devastating and causing severe flooding in the St. Bernard Parish area, among others.  Plaintiffs made claims on their Allstate policies, and subsequently filed suit against Allstate on August 29, 2006.  On or about November 27, 2006, Allstate removed the matter to this Court, asserting the following grounds:  (1)  the non-diverse defendant Capella is improperly joined and his citizenship can be disregarded in determining the existence of diversity jurisdiction; (2)  the Petition fails to state a cognizable claim against Capella; (3)  Plaintiffs' claims against Capella are time-barred under La. R.S. § 9:5606; and (4)  the amount in controversy exceeds $75,000.[1]

## II.  LAW AND ANALYSIS

### A.      Removal Jurisdiction

Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  In removal actions, the removing party bears the burden of establishing the existence of federal jurisdiction.  *See De Aguilar v. Boeing Co*., 47 F.3d 1404, 1408 (5th Cir.1995).   In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.  *See, e.g., Manguno v. Prudential Property and Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002).   Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.  *Id.*, *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  The Court

---

[1]It is undisputed that the amount in controversy exceeds $75,000.

must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C.  §  1447 (c).

    **B.**    **Improper Joinder**

    Because Allstate is the removing party, it has the burden of establishing improper joinder. Improper joinder can be shown by plaintiff's inability to establish a claim under state law against the non-diverse defendant or through actual fraud in pleading jurisdictional facts. *Melder v. Allstate Corp.*, 404 F.3d 328, 330 (5th Cir. 2005).  "If there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved', then there is no fraudulent joinder." *Great Plains Trust Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2001)).  *See also Hornbuckle v. State Farm Lloyds, et al,* 385 F.3d 538 (5th Cir. 2004).  The possibility of this liability must be reasonable, not "merely theoretical." 313 F.3d at 312. The Fifth Circuit has explained:

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the instate defendants. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Richmond v. Chubb Group of Ins. Companies*, No. 06-3973, 2006 WL 2710566, at *2-3 (E.D. La. Sept. 20, 2006)(quoting *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004)).

3

1.      **Improper Joinder Under *Tapscott***

Allstate contends that Capella was improperly joined pursuant to *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353 (11th Cir. 1996).  Such argument has previously been made and rejected by this Court.  *Schwartz v. Chubb & Sons, Inc., et al,* No. 05-6885, 2006 WL 980673 (E.D. La. April 11, 2006); *Radlauer v. Great Northern Ins. Co., et al,* No. 06-1737, 2006 WL 1560791 (E.D. La. May 16, 2006).  Accordingly, this argument is without merit.

2.      **Capella's Duty and Agency**

Allstate claims that because Capella simply sold Plaintiffs an insurance policy, he had no fiduciary duty, and, as an agent for a disclosed principal, cannot therefore be personally liable for the claims under the Allstate policy. The law in Louisiana states that a disclosed agent does not become personally bound to the third person with respect to the principal's contract unless the agent exceeds his authority. La. Civ. Code Ann. art. 3016 (1997).  An agent also is personally liable for damages "occasioned by intentional or negligent misrepresentations as to facts which he knows or has reason to know are false."  *Dorsey v. Mfrs. Life Ins. Co.*, 1997 WL 70335 4, at *7 (E.D.La. Nov. 10, 1997)  (quoting *McCollum v. Harbor View Townhouses, Inc.*, 428 So.2d 846, 847 (La.App. 5th Cir. 1983)).

Allstate further claims that Capella, as insurance agent, had no duty to advise Plaintiffs of additional coverage even if additional coverage had existed.  Louisiana case law has established that an insurance agent does have a fiduciary duty to the insured and is liable for a negligent breach of that duty.  In *Offshore Production Contractors, Inc. v. Republic Underwriters Ins. Co.,* 910 F.2d 224, 229 (5th Cir. 1990), the Fifth Circuit held that the insurance agent was more than a mere order

4

taker. An agent who has undertaken to provide insurance has made an agreement to provide coverage for a client's specific concerns when the agent knows of the risks against which the insured wants protection and has experience with those types of coverages on the market. *Offshore Production Contractors, Inc., supra,* 910 F.2d at 229. To recover losses suffered, a plaintiff must demonstrate: (1) an undertaking or agreement by the agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that he is properly insured. *Sullivan v. State Farm and Casualty Co.*, No. 06-1677, 2006 WL 2119320, at *3 (E.D. La. July 27, 2006).

Plaintiffs assert that Capella advised them on both their homeowner[2] and flood policies, which were purchased based on the recommendation and expertise of Capella. Plaintiffs allege the following against Capella:

8.

James and Patricia Bates sought advice from and purchased policies of insurance from Frank B. Capella, III, a licensed insurance agent authorized to do and doing business in the State of Louisiana and the Parish of St. Bernard. The plaintiffs relied on Mr. Capella's insurance expertise to provide them with complete and competent advice regarding the amount and type of insurance to provide them with full coverage.

*        *        *

---

[2] The homeowners' coverage was $162,878 for "Dwelling", $16,288 for "Other Structure", and $122,159 for "Personal Property."

43.

Plaintiffs, James and Patricia Bates, sought the advice of and relied on the expertise of Frank B. Capella, III, a licensed insurance agent for Allstate, to obtain full and complete flood and homeowner's coverage for their residence at 3429 Karen Drive, Chalmette, Louisiana 70043.

44.

As the plaintiffs' fiduciary, Mr. Capella obtained a homeowner's policy of insurance through Allstate and a flood insurance policy from the National Flood Insurance Program underwritten by FEMA.

45.

At all times relevant herein, Mr. Capella advised the plaintiffs that the flood insurance policy would provide full coverage for all damage that might be incurred to the dwelling and its contents and that plaintiffs were fully insured.

46.

At all times relevant herein, Mr. Capella advised the plaintiffs that the homeowners' insurance policy provided full coverage for all damages that might be incurred to the dwelling and its contents and that plaintiffs were fully insured.

47.

However, Mr. Capella obtained far less in dwelling and contents coverage under the flood insurance than he sold them in homeowner's insurance through Allstate.

48.

Mr. Capella did not advise plaintiffs as to the necessity and/or availability of a greater amount of dwelling and contents coverage under the flood insurance policy. Otherwise, plaintiffs would have purchased a dwelling contents insurance in an amount commensurate with the replacement value of this dwelling and contents contained therein.

49.

In actuality, neither policy sold to plaintiffs was sufficient in policy limits to pay to replace  and/or repair the damage incurred as a result of covered perils under both/either policy.

50.

Moreover, Mr. Capella assured plaintiffs that the loss of use ALE[3] insurance under their homeowner's policy would cover them regardless if their loss of use/ALE was incurred as a result of flooding.

51.

As a result of Mr. Capella's negligence and/or breach of contract and/or breach of fiduciary duty in failing to procure sufficient insurance for flood and/or wind perils, plaintiffs were uninsured/underinsured and have suffered significant damages.

Insurance agents are generally not responsible for divining what coverages are desired or even needed by an insured.  In ¶ 50 of the Petition, however, Plaintiffs assert that Capella "assured plaintiffs that the loss of use ALE insurance under their homeowner's policy would cover them regardless if their loss of use/ALE was incurred as a result of flooding."  An affirmative assurance by Capella, if true and subject to proof, might constitute exceeding his authority as agent, as well as a negligent misrepresentation of coverage of the insurance policy, at least when this particular allegation is considered in a light most favorable to Plaintiffs.

---

[3]"ALE" is not defined in the original Petition, but is presumed to mean "Additional Living Expense", afforded under the homeowner's policy.

Regarding Plaintiffs' other allegations, Allstate attaches the Affidavit of Capella to its opposition to the Motion to Remand.  Capella confirms that he is "a licensed Allstate Insurance Company agent since July 1982." (Affidavit, ¶ 4)  He further declares that he has been the Allstate agent on Plaintiffs' policy since October 3, 1994, which policy was renewed annually without interruption.  Capella indicates that, although a full copy of the Allstate Deluxe Plus Homeowners Policy was mailed to Mr. Bates on October 3, 1994, he "was contacted on April 12, 2005 to request that the Policy be changed to reflect information regarding a new First Mortgagee on the property. This amendment to change the name of the mortgagee was effective on April 13, 2005." (Capella Affidavit, ¶¶ 8 and 9)  Confirming that flood insurance was purchased on the property in 2001, Capella further states:  "there have been no substantive changes since 2001.  At no time did James Edwin Bates, Jr. request, nor did I refuse or agree to provide any information regarding coverage for hurricanes or for flood damages or any information regarding coverage under the flood policy." (Capella Affidavit, ¶ 12)

In response to the Capella Affidavit, Plaintiffs provide their own Affidavit, wherein Mr. Bates indicates that he has "never received a copy of my flood or homeowners' policies" (Bates Affidavit, ¶ 11); and that "Capella assured me that my homeowners' policy provided me 'hurricane' coverage, which he explained to mean that the homeowners' policy would cover the Property for any damage resulting from a hurricane." (Bates Affidavit, ¶ 9)  Bates further states that he did not become aware of his lack of coverage until November 2005 during the process of filing a claim with Allstate.  (Bates Affidavit, ¶ 13)  In his Affidavit, Bates further contends:

8

"I had two separate buildings on my property, but Capella sold me flood insurance on only one of them;

I was told by the flood adjuster that my second building was not covered under my flood policy, and that my agent should have written a separate flood policy for the second building;

I requested full flood insurance on all my property from Capella, and relied on his expertise in providing the proper coverage."

(Bates Affidavit, ¶¶ 15 - 17)

The Court finds that these conflicting affidavits, when considered in a light most favorable to Plaintiffs[4], and together with the Petition, state a claim against Capella, and might be sufficient to demonstrate that Capella exceeded his authority in representing (or negligently misrepresenting, as Plaintiffs contend) the coverage of the insurance policies at issue herein. They likewise suggest a possible breach of the fiduciary duty owed in procuring requested insurance coverage, if Plaintiffs can provide the necessary proof.

### 3.     Peremption

Allstate also contends that any claim against Capella is time-barred. A peremptive period is a period of time fixed by law for the existence of a right, and the right is extinguished unless timely exercised within the period. La. R.S. 9:5606(A) provides, in pertinent part:

---

[4]The allegations of the original Petition make no mention of the "second building" which was allegedly uninsured. Even if the Court does not construe the Petition's allegations liberally enough to include this claim, a facially valid breach of duty claim has been made against Capella.

9

No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

This Court has held that when examining an improper joinder claim, "the district court must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Richmond v. Chubb Group of Ins. Companies*, No. 06-3973, 2006 WL 2710566, at *9 (E.D. La. Sept. 20, 2006) (quoting *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). The Court concluded in *Richmond* that because the plaintiffs had not stated when the alleged omission had occurred, the Court could not determine whether the peremptive period had expired under Louisiana R.S. 9:5605. 2006 WL 2710566 at *20.

In this case, Plaintiff's home insurance policy was purchased on or about October 3, 1994, and was renewed annually thereafter without interruption. The flood policy at issue herein was purchased in 2001, and was renewed thereafter without any substantive changes to such policy. Capella's Affidavit (in ¶ 8) indicates that he had contact with the insured Plaintiffs on April 12, 2005, with regard to changing the first mortgagee on the insured property. In his Affidavit, Plaintiff Bates does not provide a specific date for the error/omissions he contends Capella committed, but does state, in ¶ 12, that "again in October 2004, Capella agreed to procure sufficient insurance to

cover all of our property, both real and personal, located at the Property." While it is reasonable to assume that conversations and other communication between the agent and the insured occurred at the time such insurance was procured and/or renewed, two separate conversations apparently occurred between the insured and Capella: one in October 2004, and another in April 2005. While certainly these affidavits invite further discovery as to the particulars of such communication, the Court is unable, at this juncture, to find the claim against Capella to be time-barred (though it might ultimately prove to be so), particularly since Plaintiffs contend they did not receive the policy in question, and that they first discovered the insufficiency of their coverage in November 2005.[5]

### III.   ATTORNEY'S FEES AND COSTS

Plaintiffs also seek an award of attorney's fees and costs in connection with the Motion to Remand. Under 28 U.S.C. § 1447(c), a court "may award attorney's fees" only where the removing party lacked an objectively reasonable basis for seeking removal. *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290 (5th Cir. 2000). Finding that removal in this case was not objectively unreasonable, the Court declines to award attorney's fees and costs in connection with this Motion to Remand.

### IV.   CONCLUSION

For the foregoing reasons, the Motion to Remand is hereby **GRANTED IN PART** insofar as it seeks remand of this matter to the 34th Judicial District Court for the Parish of St. Bernard, State

---

[5]The Court notes that neither the Petition nor the affidavits provide information regarding any events occurring more than a year prior to Plaintiffs filing suit on August 29, 2006.

of Louisiana; and is **DENIED IN PART** to the extent it seeks recovery of attorney's fees and costs

in connection with the motion.

New Orleans, Louisiana, this  _11th_  day of <u>July</u>, 2007.


**KURT D. ENGELHARDT**
**United States District Judge**

12